UNITED STATES DISTRICT COURT

DISTRICT COURT OF OREGON


COLUMBIA STATE BANK,                                              3:12-cv-00035-AC
successor in interest to the FDIC
as receiver for Columbia River Bank,
a Washington Bank

                                     Plaintiff,                   FINDINGS AND
                                                                  RECOMMENDATION

            v.

KEVIN J. O'MEARA, an individual;
DEIDRE E. O'MEARA, an individual;
MICHAEL H. MENDAZONA,
an individual; SOUTH VALLEY BANK
AND TRUST, an Oregon State Bank;
TCF INVENTORY FINANCE, INC.,
a Minnesota corporation,

                                     Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

        This case arises from a commercial loan dispute over the payment of debt from business

financing that Plaintiff Columbia State Bank ("Columbia") provided Defendants Kevin J.

FINDINGS AND RECOMMENDATION        1                                        {CKH}

O'Meara and Deidre E. O'Meara (collectively "the O'Mearas"). The O'Mearas have moved to compel arbitration. (Dkt. 7.) The parties do not dispute that Columbia's underlying claims are subject to the arbitration clause contained in the various agreements they signed. At issue is whether the O'Mearas have properly initiated arbitration under the American Arbitration Association's ("AAA") Rules ("AAA Rules") in order to proceed with arbitration. They contend that this question should be determined by the arbitrator, not the court. Because this question is procedural in nature it falls outside the court's limited authority under the Federal Arbitration Act ("FAA"). Thus, the court grants the motion to compel arbitration and stay Columbia's claims before this court.

## Background

Columbia and the O'Mearas began a creditor/debtor relationship after entering into a credit agreement in December 2006. (First Am. Comp. Ex. 1, at 1.) Subsequently, the two parties entered into at least six additional contracts, each revising or securing the original line of credit. (First Am. Comp. Exs. 1-10.) After the O'Mearas defaulted, Columbia filed a complaint against the O'Mearas, Michael Mendazona, South Valley Bank and Trust, and TCF Inventory Finance, Inc. for breach of contract and judicial foreclosure, (Dkt. 1), and amended that complaint on February 2, 2013. (Dkt. 4.) On April 9, 2012, this court entered a default judgment against defendant Michael Mendazona for failing to defend those actions. (Dkt. 31.) Only the O'Mearas bring this motion to compel arbitration. (Dkt. 7.)

*Legal Standard*

"A written provision in any . . . contract evidencing a transaction involving commerce" is subject the FAA.[1]  9 U.S.C. § 2 (2006).  The FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  When a party has invoked this section of the FAA, the court's enforcement role is limited to determining  only "questions of arbitrability" – "whether the parties have submitted a particular dispute to arbitration."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  Questions of arbitrability, however, include only two gateway issues: (1) the validity of the agreement; and (2) the scope of the agreement – whether the agreement encompasses the dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).  If, and when, the arbitration agreement is valid and encompasses the dispute at issue, "the Act requires the court to enforce the arbitration agreement in accordance with its terms" and compel arbitration.  *Chiron*, 207 F.3d at 1130.

*Discussion*

The O'Mearas cite six contracts between them and Columbia that contain arbitration agreements:  (1) the Deed of Trust recorded on December 11, 2006, (First Am. Comp. Ex. 1, at 5); (2) the Promissory Note dated March 12, 2008, (*Id.* at 2); (3) the Promissory Note dated February

---

[1]The O'Mearas also cite standards from Oregon case law.  The court does not address these standards because the express terms of the arbitration agreements in the parties' contracts provide that the FAA governs enforcement of the clause.  The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *See Rent–A–Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  The agreements specifically state: "The [FAA] shall apply to the construction, interpretation, and enforcement of this arbitration provision."  (Manfredi Decl. 1-7.)

FINDINGS AND RECOMMENDATION        3                              {CKH}

12, 2010, (*Id.* at 2); (4) the Business Loan Agreement dated February 12, 2010, (*Id.* at 3-4); (5) the Commercial Security Agreement dated February 12, 2010, (*Id.* at 4); and (6) the Assignment of Land Contract dated February 12, 2010, (*Id.* at 4-5).  Those agreements state the parties to the contracts agree to these terms:

> [T]hat all disputes, claims and controverises between [] whether individual, joint, or class in nature, arising from this [] or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the [AAA Rules] in effect at the time the claim is filed, upon request of either party. . . . The [FAA] shall apply to the construction, interpretation, and enforcement of this arbitration provision.

(Manfredi Decl. 1-8).  Columbia argues a motion to compel arbitration is premature because the O'Mearas did not initiate arbitration according to the terms of the agreement, and therefore have no right to enforce the clause.  (Resp. 2.)  As Columbia's argument goes, because the arbitration agreements specify the parties will arbitrate disputes pursuant to the AAA Rules, the O'Mearas have not invoked the arbitration clause until they have initiated the arbitration according to the Rule R-4 of the AAA Rules, including paying a filing fee.  (Resp. 5.)

Thus, there is no dispute over whether the parties agreed to arbitrate the claims that Columbia filed in this court.  (Dkt. 4.)  Columbia in fact initially offered to stipulate to an order "abating the instant proceeding to allow arbitration to commence once the O'Mearas properly initiated arbitration with the [AAA]."  (Emerick Decl. 2.)  In other words, the parties agree they are bound by the arbitration agreement and that the agreement covers disputes such as Columbia's underlying claims; the parties disagree about who must pay the fee for initiating arbitration and whether the court or the arbitrator should resolve the dispute over the fee.  "[T]he question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter*.  Rather the relevant question here is what *kind of arbitration proceeding the parties agreed to*." *Green Tree Fin. Corp.*

*v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion) (emphasis in original).  The issue for the court, therefore, is whether the dispute over the proper procedure to initiate arbitration under this agreement is for the court, or the arbitrator, to resolve.  The court concludes this is a procedural dispute that falls in the province of the arbitrator.

In their briefing, the parties discuss *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008), but that case is inapplicable to the inquiry here.  In *Cox*, the central issue was whether the parties were bound to the agreement; as such, the case fell within the first gateway issue, determining the agreement's validity.  533 F.3d at 1121.  The plaintiff conceded he was not bound by the arbitration agreement because the defendant had already revoked the clause through breach or waiver.  *Id.*  Although the court discussed the plaintiff's "failure properly to initiate arbitration under the AAA [R]ules," that reference bore on the determination of the plaintiff's ability to raise defenses to defendant's motion to compel – an analysis that did not require the court to interpret or apply the AAA Rules.  *Id.* at 1125-26.  In fact, the court did not determine what particular effect such failure would have on plaintiff's ability to succeed in defending a motion, let alone the plaintiff's ability to bring a motion to compel.  As stated above, the case here does not invoke the first gateway issue because the validity of the agreement is not in dispute; and so, the court does not apply the reasoning in *Cox*.

As for the second gateway question, whether the agreement encompasses the dispute over the initiation fees, the court begins the analysis by looking to the express terms of the agreement, which include "all disputes, claims and controverises between [] whether individual, joint, or class in nature, arising from this [agreement] . . . pursuant to the [AAA Rules]."  (Manfredi Decl. 1-8.)  An agreement to arbitrate is a matter of contract.  *Chiron*, 207 F.3d at 1130.  As with any other

contract dispute, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960).

The court finds the dispute over payment of initiation fees to be subject to arbitration under the plain terms of all six arbitration agreements. The Ninth Circuit has determined the effect of similar procedural language on the scope of an arbitration agreement. Specifically, the Ninth Circuit considers "arising hereunder" and "arising under this Agreement" to be "relatively narrow as arbitration clauses go," in contrast to the broader language recommended by the AAA: "arising out of or relating to." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (citation omitted). The narrower language is restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance." *Id.* Determining whether the O'Mearas properly initiated arbitration is a matter of interpreting the arbitration agreement and specifically the meaning of the AAA Rules referenced within. As such, the phrase, "arising from this," used in these six arbitration agreements encompasses the dispute about initiation fees, even under the Ninth Circuit's narrowest interpretation of similar language.

The incorporation of the AAA Rules into the agreement is further support for the interpretation that the plain language of the contract requires the dispute over fee payment be submitted to an arbitrator. The Ninth Circuit has held that parties whose contracts incorporate the AAA Rules into their agreement recognize the arbitrator's discretion in resolving questions of fees. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Specifically,

because the arbitration agreement in *Lifescan* stated "'[s]uch arbitration shall be conducted in accordance with the then-current rules of the [AAA,]' [t]he parties thus incorporated the AAA Rules into their agreements.'" *Id.*  And so, the Ninth Circuit deemed the parties' dispute over payment of the pro-rata share of arbitration fees to fall in the arbitrator's discretion pursuant to the AAA Rules, noting the directive therein:  "The arbitrator shall interpret and apply these rules insofar as they related to the arbitrator's power and duties." *Id.* (quoting AAA, Commercial Arbitration Rules and Mediation Procedure R-53 (June 1, 2010)).  The court also noted in *Lifescan* the AAA Rules grant the arbitrator broad discretion in the administration of fees, including the authority to apportion and defer fees.  *Id.* (citing  AAA, Commercial Arbitration Rules and Mediation Procedure R-42 (June 1, 2010) ("the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate"); and *Id.* at R-49 ("the AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees)).  Here, just as in *Lifescan*, the O'Mearas and Columbia incorporated the AAA Rules into their agreement through inclusion of the phrase:  "shall be arbitrated pursuant to the [AAA Rules] in effect at the time the claim is filed" in all of their arbitration clauses.  (Manfredi Decl. 1-8.)  By the plain terms of their agreement, the parties recognize the arbitrator's discretion to resolve their dispute over how the initiation fees will be paid under Rule R-4.

Next, the court turns to the federal courts' treatment of disputes over the procedural issues in applying arbitration agreements.  The phrase, "question of arbitrability," defining the courts' authority under the FAA, encompasses arbitration disputes such as:

> The kind of narrow circumstances where contracting parties would likely have
> expected a court to have decided the gateway matter, where they are not likely to
> have thought that they had agreed that an arbitrator would do so, and, consequently,

> where reference of the gateway dispute to the court avoids the risk of forcing parties
> to arbitrate a matter that they may well not have agreed to arbitrate.

*Howsam*, 537 U.S. at 83-84.  As such, the United States Supreme Court has found the phrase

"'question of arbitrability' *not* applicable in other kinds of general circumstances where parties

would likely expect that an arbitrator would decide the gateway matter." *Id.* at 84 (emphasis in

original).  For example "procedural questions which grow out of the dispute and bear on its final

disposition" are presumptively for the arbitrator to decide.  *Id.* (citing *John Wiley & Sons, Inc. v.

Livingston*, 376 U.S. 543, 546-547 (1964)).  Therefore, "in the absence of an agreement to the

contrary, issues of substantive arbitrability are for the court to decide and issues of procedural

arbitrability, i.e. . . . conditions precedent to an obligation to arbitrate have been met, are for the

arbitrators to decide." *Id.* at 85 (internal quotation omitted).

       In *Howsam*, the United States Supreme Court found that an arbitrator, not a court, must

determine the applicability of a National Association of Securities Dealers ("NASD") arbitration

rule.  Under the parties' contract, any arbitration was to proceed in accordance with the NASD

"Code of Arbitration Procedure," but the parties disputed whether a court or an arbitrator should

interpret and apply those rules.  *Id.* at 82.  The Court found the dispute did not present a narrow

question of arbitrability, for the court's determination, following the general precedent that

procedural questions fall within the province of the arbitrator.  As in *Howsam*, Columbia and the

O'Mearas' dispute is not a narrow one of arbitrability.  Here, the parties dispute the interpretation

and application of an AAA procedural rule that is incorporated generally into their agreements but

not referenced specifically.  AAA R-4 imposes a condition precedent to arbitrability – proper

initiation of arbitration and the payment of initiation fees – and does not dictate the scope of the

arbitration agreement or what substantive claims the clause will cover.  "[T]he law that has

developed under the [FAA] states that an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." *Id.* at 85 (internal quotation omitted). Based on Supreme Court precedent, the payment of initiation fees, as both a procedural requirement and a condition precedent to arbitrability, is not a question of arbitrability, and therefore not appropriate for judicial resolution.

Columbia argues that because election to arbitration through a "request" is a condition precedent to arbitration, and the O'Mearas have not made such a request, the arbitration clause had not be invoked. (Resp. 3.) The court disagrees. The arbitration agreement states "all disputes . . . shall be arbitrated . . . upon the request of either party." (Manfredi Decl. 1-8.) Federal courts have recognized the motion to compel as sufficient to trigger enforcement of an arbitration agreement, noting that ruling otherwise would serve only a formal purpose. *See, e.g., Shubert v. Wells Fargo Auto Fin., Inc.*, CIV. 08-CV-03754-NLH, 2008 WL 5451021, at *4 (D.N.J. Dec. 31, 2008) (plaintiff's argument that defendant could not enforce the arbitration agreement because plaintiff failed to formally request arbitration in writing pursuant to the AAA overemphasizes form over substance). Moreover, even before filing the motion to compel arbitration, the O'Mearas had initially requested, through correspondence with Columbia, arbitration of the action Columbia had brought in this court. Counsel for Columbia states in his declaration: "On January 27, 2012, I sent a correspondence to counsel for the O'Mearas regarding their election to arbitrate the instant dispute." (Emerick Decl. 2.) Because the O'Mearas request arbitration both through correspondence with Columbia and by filing this motion to compel arbitration, this motion is not premature.

Finally, the O'Mearas request that the court stay Columbia's claims for breach of contract and foreclosure pending the completion of arbitration proceedings. (Memo. 6.) If the court concludes the lawsuit at issue is covered by an enforceable arbitration agreement, and one party to

the agreement seeks to enforce the arbitration provision, the court may stay the lawsuit until the arbitration has been completed. 9 U.S.C. § 3. A stay, however, is not mandatory and the court may alternatively dismiss those claims that are subject to arbitration. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004) (citation omitted) (although the FAA provides for a stay pending compliance of an arbitration agreement, a request for a stay is not mandatory and a district may entertain a motion to dismiss instead). Because a stay pending completion of arbitration proceedings is appropriate here, the court stays all claims filed by Columbia in this court.

## Recommendation

The arbitration agreement between Columbia and O'Mearas is valid and encompasses the underlying claims Columbia filed in court and the parties' dispute over payment of the initiation fee – there are no questions of arbitrability for the court to resolve. Accordingly, as the FAA permits the court no discretion over issues outside the limited questions of arbitrability, the dispute is arbitrable. Moreover, the applicability of AAA Rule R-4 to the arbitration agreement is a procedural matter and condition precedent to arbitrability, which is a matter presumptively for the arbitrator, not for the court. Based on the foregoing conclusions, the O'Mearas' motion to compel arbitration and stay Columbia's claims for breach of conduct and judicial foreclosure should be GRANTED and the matter stayed.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due June 25, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION          10                              {CKH}

If objections are filed, then a response is due within 14 days after being served with a copy

of the objections.  When the response is due or filed, whichever date is earlier, the Findings and

Recommendation will go under advisement.

DATED this 11th day of June, 2012.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge